**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**Kelly D. Jones, OSB No. 074217**
kellydonovanjones@gmail.com
Direct 503-847-4329

**Matthew Sutton, OSB No. 924797**
msutton@integra.net
Direct 541-772-8050

Of Attorneys for Mr. Russell

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **NICHOLAS RUSSELL** | Case No. 1:19-cv-1 |
| Plaintiff | **CLASS ACTION ALLEGATION COMPLAINT** |
| vs. | |
| **RAY KLEIN, INC.** and **CHRISTOPHER BEVANS** | Unlawful Collection Practices Unlawful Trade Practices |
| Defendants | Demand for Jury Trial |

**COMPLAINT** – Page 1 of 24

**1.**

## DEBT COLLECTION RULES

A collector is never allowed to collect more than what is owed. If it does, and as a result people are harmed, the collector is liable for the harm.

**2.**

A collector is never allowed to falsely represent how much money it can collect. If it does, and as a result people are harmed, the collector is liable for the harm.

**3.**

A collector is never allowed to cause the likelihood of confusion about the source of a collection fee. If it does, and as a result people are harmed, the collector is liable for the harm.

**4.**

A collector is never allowed to collect a fee that is not allowed by law or by an agreement. If it does, and as a result people are harmed, the collector is liable for the harm.

**5.**

**THE STORY OF THIS CASE**

Mr. Russell lives and works in Medford. Defendants are debt collectors from Eugene. Mr. Russell owes defendants a debt from 18 years ago that he cannot afford to pay.

**6.**

October 2018. Defendants send a garnishment to Mr. Russell and his employer. A garnishment is a legal document that lets a collector take a portion of a person's paycheck to pay a debt.

**7.**

If a collector has to pay an attorney a fee to issue a garnishment, the rules allow the collector to add the fee paid to the attorney on to the amount of a person's debt. The rules say when a person's paycheck is garnished, the money collected goes to pay any issuance fees first, then the remainder is used to pay down the person's debt.

**8.**

The garnishment defendants sent Mr. Russell and his employer said Mr. Russell owed defendants a $45 issuance fee for the garnishment. When defendants collected money from Mr. Russell's paycheck, the money was used to pay defendants' $45 fee first, then the remainder was used to pay down his debt.

**9.**

**WHO WE ARE SUING AND WHY**

Ray Klein, Inc. is a debt collection corporation that goes by the name Professional Credit Service, or PCS. Christopher Bevans is a debt collection attorney who works for PCS. We refer to the debt collection corporation and its debt collection attorney as "defendants" throughout this complaint. We are suing defendants for two reasons.

**10.**

The first reason we are suing defendants is that they violated the debt collection rules by falsely representing that they were entitled to collect amounts that they were not entitled to collect, and by actually collecting amounts that they were not entitled to collect.

**11.**

The garnishment defendants used to collect money from Mr. Russell's paycheck said he owed defendants a $45 fee. But Mr. Russell did not owe defendants a $45 fee because defendants did not actually pay $45 to an attorney to issue the garnishment. Records from the Oregon State Bar prove that Mr. Bevans, the attorney who signed the garnishment, worked directly for PCS. Records from the Oregon court system prove that defendants unlawfully collected $45 fees from thousands of people.

**COMPLAINT** – Page 4 of 24

**12.**

Defendants' records prove that they wrongfully profited hundreds of thousands of dollars by collecting issuance fees from people who did not legally owe them.

**13.**

The debt collection rules prohibited defendants from using false or deceptive means or communications to collect debts or to collect amounts that they were not entitled to collect. The President of Ray Klein, Inc. will testify that his corporation must always follow these debt collection rules. A leading expert on debt collection will testify that debt collection is a competitive billion-dollar industry with strict regulations and tight profit margins. The expert will explain how laws protecting people from unfair debt collection date back to America's Founding Fathers. The Constitution instructed Congress to enact uniform laws on debt forgiveness. Almost 75 years after the Constitution was ratified, Congress passed the 13th Amendment, prohibiting all forms of indentured servitude. Another 100 years later, the United States Supreme Court began declaring debtors' prisons unconstitutional. In 1977, Congress passed the Fair Debt Collection Practices Act to protect people from unfair collection practices. Oregon law specifically sets the amount of certain types of fees that collectors may legally collect.

**14.**

The expert will testify that the purpose of the debt collection rules is not only to protect people who owe debts from abusive practices, but also to protect honest debt collection corporations who choose to follow the rules from being competitively disadvantaged.

**15.**

The second reason we are suing defendants is that they caused the likelihood of confusion about the source of their garnishment issuance fee, and as a result, collected a fee that wasn't allowed by law or by an agreement, causing people to suffer losses in the amount of the fees that defendants were not entitled to collect.

**16.**

Two leading Oregon debt collectors will testify that defendants' garnishment issuance fee scheme allowed defendants to gain an unfair advantage over other collection corporations that chose not to engage in such schemes. An attorney who represents collectors will testify that in 2017 a group of collection corporation representatives gathered in a meeting and discussed ways that unscrupulous collectors might attempt to get rich by taking advantage of the recent increase in Oregon's garnishment issuance fee.

**17.**

An accountant will testify that after reviewing defendant's records, defendant's garnishment issuance fee scheme wrongfully collected hundreds of thousands of dollars from thousands of people. The President of Ray Klein, Inc. will testify that he operates a multi-million-dollar collection corporation that has been doing business for over 40 years.

**18.**

**BEFORE DECIDING TO SUE**

The final reason we are suing is because defendants refused to stop their unlawful collection practices and continued to cause the likelihood of confusion about the source of their illegal $45 garnishment issuance fees. So we're forced to bring defendants to trial. Before deciding to sue, several things had to be determined.

**19.**

For example, did Mr. Russell or his employer or the Court system have any responsibility for the $45 issuance fee on defendants' garnishment? Because if they did, defendants would not be solely to blame for the money that was wrongfully taken from Mr. Russell.

**20.**

We reviewed state and federal debt collection laws and determined that debt collectors alone are responsible to make sure their garnishments are accurate and not confusing. The law says debt collectors are strictly responsible for any violations of the law, even violations that are unintentional.

**21.**

We also had to determine whether defendants had any defenses or excuses for their violations.

**22.**

We reviewed state and federal debt collection laws and determined that defendants have no bona fide error defenses or excuses in this case because they relied on their own information when they drafted their garnishments. The law says that debt collectors are liable for breaking the rules, even if their attorneys had advised them that what they were doing was legal.

**23.**

**JURISDICTION AND THE PARTIES**

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367 because the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, is a federal consumer protection law, and because Mr. Russell's claim under ORS 646.638 (UTPA) and ORS 646.641 (OUDCPA) are so related to the FDCPA claim that they form part of the same case and controversy.

**24.**

Mr. Russell is an individual living in Jackson County, Oregon and a "consumer" protected by the OUDCPA and FDCPA because his wages have been garnished by defendants based upon a debt incurred for personal, family, household purposes (the "debt"). Mr. Russell is also a "person" protected by the UTPA.

**25.**

Defendants are each a "person" governed by the UTPA because they regularly collect debts in the course of their business and occupation. Ray Klein, Inc. is a Washington corporation doing business in Oregon, including business involving the issuance of garnishments, through its operations center located in Lane County, Oregon. PCS is a registered collection agency as required by ORS 697.015; license number 40020.

**COMPLAINT** – Page 9 of 24

**26.**

Defendants are each a "debt collector" as that term is defined in the OUDCPA and FDCPA because they regularly collect defaulted debts owed to, and on behalf of, others, using the United States Postal Service, and the principal purpose of their business is the collection of delinquent debts.

**27.**

Venue is proper under 28 U.S.C. § 1391 because defendants collected debt from Mr. Russell when he resided in Jackson County, Oregon.

**28.**

**FACTUAL ALLEGATIONS**

This complaint's allegations are based on personal knowledge as to Mr. Russell's behavior and made on information and belief as to the behavior of others. On September 26, 2000, Washington Mutual Bank got a judgment on a consumer debt in a small claims court lawsuit in Jackson County Circuit Court Case No. 002496SM. The lawsuit and judgment in the Jackson County case named Nicholas L. Russell incorrectly as "Nickolas" Russell. On February 21, 2003, Washington Mutual Bank assigned the judgment to PCS. PCS corrected Mr. Russell's name in the case caption without court authorization so that it could garnish his wages. Mr. Russell was unaware of the judgment, and believed that the underlying Washington Mutual Bank debt had been paid in full long before the Jackson County case was filed against him.

**29.**

PCS is a multi-state collection agency based in Oregon bringing in millions of dollars each year in revenue from the collection of consumer debt. A primary and substantial source of this revenue for PCS is the proceeds generated from writs of garnishment. These garnishments are typically sent to the employers and banks of debtors to collect money to apply against outstanding court judgments.

**30.**

Rather than hire and pay attorney fees to outside counsel for issuing its garnishments, PCS issues its garnishments through its own salaried in-house attorneys, including Christopher Bevans. PCS issues over 1,000 garnishments per month, a significant portion of which are issued through Mr. Bevans.

**31.**

Oregon law strictly limits the dollar amounts that garnishments may include to amounts set forth in court judgments, plus certain out-of-pocket expenses incurred and actually paid by collectors, as listed at ORS 18.999. Debtors are supposed to be protected from random, unjust or unauthorized charges in the garnishment process. However, certain collectors and attorneys like defendants view ORS 18.999 not as a limitation on what they can collect, but as an opportunity to increase their profits.

**32.**

Within certain limitations, the Oregon Legislature has allowed collectors to include "fees paid to an attorney for issuing a garnishment". However, as the limit has increased over time, certain collectors have succumbed to the temptation to turn these issuance fees into an improper profit center.

**33.**

Over the years, the Oregon Legislature has increased the limit on issuance fees from $7 per garnishment to $12 in 2007, to $18 in 2009, to $35 in 2011, to $37 in 2013, and to $45 in 2017. These limitations have provided unscrupulous collectors with cover to charge issuance fees that were never actually paid to an attorney for the issuance of garnishments.

**34.**

Although PCS has its garnishments issued by its own in-house attorneys, rather than paying outside counsel for the issuance of the garnishments, defendants' practice has been and remains to charge debtors with the maximum issuance fee on every garnishment they issue. By not actually incurring these fees, yet collecting them from debtors, defendants have perverted the statutory scheme. Based on an estimate of PCS's in-house counsel issuing 1,000 garnishments per month, PCS would stand to bolster its profits by $540,000 per year using the garnishment issuance fee scheme as alleged in this complaint.

**35.**

Salary paid by PCS to its in-house attorneys, in part for issuance of the garnishments, does not constitute appropriate issuance fees, *i.e.*, "fees paid to an attorney for issuing a garnishment", that can be charged to a debtor under Oregon garnishment laws.

**COMPLAINT** – Page 13 of 24

**36.**

Even if such salary did constitute issuance fees, charging $45 on thousands of garnishments each year constitutes excessive and unreasonable fees in violation of Oregon's Rules of Professional Conduct (ORPC) which apply to Christopher Bevans and all other in-house attorneys of PCS. To the extent that these fees are shared by these attorneys with PCS or any of its affiliates, this is an additional violation of the ORPC. Accordingly, PCS's garnishment issuance fee scheme as alleged in this complaint is a misleading, confusing, unfair and unconscionable collection practice causing ascertainable losses to thousands of debtors each year.

**37.**

By adopting the FDCPA, Congress elevated the right of a consumer such as Mr. Russell to be completely free from a debt collector's unlawful collection practices. The invasion of that right by defendants is a concrete injury in fact for which this Court may provide relief. Defendants' unlawful, deceptive, and unconscionable garnishment practices further present an actual material risk of continuing harm to Mr. Russell and members of the putative class that are regularly being garnished for amounts that defendants are not entitled to collect in violation of the FDCPA and UTPA.

**38.**

**CLASS ACTION ALLEGATIONS**

Under FRCP 23, Mr. Russell brings this action on behalf of himself and all other similarly situated individual consumers. The class is initially defined as:

a) all individual consumers with Oregon addresses;

b) whose wages or accounts were garnished by either defendant;

c) from whom PCS collected a purported garnishment issuance fee that was not actually for fees paid to an attorney for issuing a garnishment.

**39.**

A class action is proper under FRCP 23(a) because based on Oregon court records, the class consists of thousands of individual consumers, and joinder of all members is impracticable. Each class member is easily identifiable based on defendants' files and Oregon court records. Excluded from the class are all attorneys for the class, officers and members of PCS, any judge who sits on the case, and all jurors and alternate jurors who sit on the case.

**40.**

This action can be maintained as a class action under FRCP 23(a) and (b) because there are questions of law and fact common to the class members, which predominate over any questions relating to individual class members, including but not limited to:

    a)  Whether defendants' collection of garnishment issuance fees violated the FDCPA;

    b)  Whether defendants' collection of garnishment issuance fees violated the UTPA and OUDCPA;

    c)  Whether PCS should be able to retain the profits derived from its unjust collection of garnishment issuance fees.

**41.**

Mr. Russell's claims are typical of the claims of the class members, as they are based on the same factual circumstances, form garnishments, common collection scheme, and legal theories. Mr. Russell has no interests adverse to the class members.

**42.**

Mr. Russell will fairly and adequately represent and protect the interests of the members of the class. Mr. Russell has retained nationally known and locally respected counsel experienced in class action litigation and FDCPA and UTPA and OUDCPA litigation to further ensure such representation and protection of the class.

**43.**

Mr. Russell and his counsel intend to prosecute this action vigorously and have the resources necessary to successfully try this case to judgment.

**44.**

A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Absent class-wide adjudication, members of the class are without effective recourse. Because of the relatively small monetary value of each individual class member's claim, few, if any, class members could afford to prosecute an individual action against defendants. The federal court filing fee alone is double the maximum statutory damages available under the UTPA or OUDCPA. Absent class treatment, defendants' alleged wrongdoing would go unabated, and no class member would be afforded the opportunity to seek judicial relief, whether for themselves or for the public good generally.

**45.**

A class action is appropriate under FRCP 23(b)(3) because the questions of law and fact regarding the nature and legality of defendants' practices as alleged in this complaint predominate over any questions affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, for the following reasons:

a) The prosecution of separate actions creates a risk of inconsistent or varying rulings;

b) The common questions of law and fact described above predominate over questions affecting only individual members;

c) Individual class members would have little interest in controlling the prosecution of separate actions because the amount of each individual claim is relatively small compared to the complexities of the issues and the expenses of litigation;

d) This is a desirable forum because this Court has significant experience managing class actions under the FDCPA and the UTPA, a class action will be an efficient method of adjudicating the claims of the class members, and class members have claims that are not significant in amount relative to the expense of the litigation, so separate actions would not afford significant relief to the members of the class.

**COMPLAINT** – Page 18 of 24

**46.**

**CLAIMS FOR RELIEF**

**– Claim 1 for the Putative Class –**

**Violation of the FDCPA**

Defendants' choice to unfairly collect garnishment issuance fees from Mr. Russell and the putative class members when Oregon law prohibited the collection of such fees under the circumstances, and to falsely represent entitlement to such fees, were false, deceptive, and misleading representations, and means to collect debt, a false representation of the amount of debt, and an unfair and unconscionable means in collection of debt that is not allowed by law, in violation of 15 U.S.C. § 1692e, § 1692e(2)(A), § 1692e(5), § 1692e(10), § 1692f, and § 1692f(1).

**47.**

As a result of defendants' violation of the FDCPA as alleged above, Mr. Russell and all other similarly situated individual consumers are entitled to actual damages including any amounts paid to or collected by defendants for unlawful fees under § 1692k(a)(1), statutory damages under § 1692k(a)(2)(B), and reasonable fees and costs under § 1692k(a)(3).

**48.**

**– Claim 2 for the Putative Class –**

**Violation of the UTPA**

In the course of their business and occupation as a debt collector, defendants caused likelihood of confusion and of misunderstanding as to the source of the fees charged to Mr. Russell and other Oregon consumers in connection with the issuance of garnishments in violation of ORS 646.608(1)(b), causing Mr. Russell and putative class members to suffer an ascertainable loss of money in the form of unlawful fees collected from them by defendants.

**49.**

Defendants' conduct as alleged in this complaint was reckless, in pursuit of improper profit, and constituted a wanton, outrageous and oppressive violation of the rights of Mr. Russell and the putative class members to be free from unlawful trade practices. As a result of defendants' violation of the UTPA as alleged above, Mr. Russell and all other similarly situated individual consumers are entitled to actual damages or $200 statutory damages per individual, whichever is greater, punitive damages, and reasonable fees and costs under ORS 646.638.

**50.**

**– Claim 3 for the Putative Class –**

**Violation of the OUDCPA**

As alleged in this complaint, defendants used and employed the unlawful practice of knowingly collecting a garnishment issuance fee that was not permitted by law or by an agreement, from Mr. Russell and other Oregon consumers, in violation of ORS 646.639(2)(s), causing Mr. Russell and putative class members to suffer injury in the form of unlawful fees collected from them by defendants.

**51.**

Defendants' conduct as alleged in this complaint was reckless, in pursuit of improper profit, and constituted a wanton, outrageous and oppressive violation of the rights of Mr. Russell and the putative class members to be free from unlawful collection practices. As a result of defendants' violation of the OUDCPA as alleged above, Mr. Russell and all other similarly situated individual consumers are entitled to actual damages or $200 statutory damages per individual, whichever is greater, punitive damages, and reasonable fees and costs under ORS 646.641.

**52.**

**– Claim 3 for the Putative Class –**

**Unjust Enrichment**

As a matter of justice and equity, defendants should not be able to retain the unlawful fees they collected from Mr. Russell and the putative class as alleged in this complaint. Mr. Russell and the putative class are entitled to restitution based on defendants' unjust enrichment as alleged in this complaint.

**53.**

Demand for jury trial.

**54.**

**PRAYER FOR RELIEF**

Mr. Russell seeks orders and judgments for himself and the putative class members as described in paragraphs 46 to 53, an order that this case may proceed as a class action, an order appointing OlsenDaines, The Law Office of Kelly D. Jones, and attorney Matthew Sutton as interim lead class counsel, an order that defendants violated the FDCPA and UTPA and OUDCPA, and for maximum pre and post judgment interest, and any other relief this Court may determine is fair and proper.

January 1, 2019

RESPECTFULLY FILED,

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**COMPLAINT** – Page 23 of 24

## PROOF OF MAILING

I declare and certify that on the date below I caused a copy of this document to be delivered to the following:

**Ellen Rosenblum**
**Oregon Attorney General**
**Oregon Department of Justice**
**1162 Court Street NE**
**Salem, Oregon 97301-4096**

January 1, 2019

s/ Michael Fuller
**Michael Fuller, OSB No. 09357**
Lead Trial Attorney for Plaintiff
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-743-7000

**COMPLAINT** – Page 24 of 24