IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**NICHOLAS RUSSELL**,

       Plaintiff,

  v.

**RAY KLEIN, INC.** and
**CHRISTOPHER BEVANS**,

       Defendants.

No. 1:19-CV-00001-MC

**OPINION AND ORDER**

**MCSHANE, Judge:**

      Plaintiff Nicholas Russell brings this putative class action against Ray Klein, Inc. and Christopher Bevans for alleged violations of the Oregon Uniform Trade Practices Act ("UTPA"), Oregon Unlawful Debt Collection Practices Act ("UDCA"), and Federal Fair Debt Collection Practices Act ("FDCPA"). With respect to the UTPA, Mr. Russell alleges that Defendants are misrepresenting to debtors that they are authorized by state law to charge a $45 attorney's fee upon garnishment. Defendants move to dismiss the UTPA claim pursuant to Fed. R. Civ. P. 12(b)(6). Because Mr. Russell has alleged a plausible claim that Defendants' have violated the UTPA, Defendants' Motion to Dismiss (ECF No. 14) is DENIED.

**BACKGROUND**

      More than eighteen years ago, Nicholas Russell obtained a loan or extension of credit from non-party Washington Mutual Bank. First Am. Compl. ("FAC") ¶ 27, ECF No. 1. The loan was obtained for "personal, family, or household purposes." FAC ¶ 27. When Mr. Russell defaulted on that obligation, Washington Mutual initiated a lawsuit in Jackson County Circuit Court and

Page 1 – OPINION AND ORDER

obtained a judgment against Mr. Russell. FAC ¶ 27. Several years later, on February 21, 2003, Washington Mutual assigned that judgment to Ray Klein, Inc. FAC ¶ 27.

In an effort to enforce its judgment, Ray Klein, Inc., acting through its in-house attorney Christopher Bevans, issued a writ of garnishment to Mr. Russell's employer in October 2018. FAC ¶¶ 9, 6, 29. A copy of the writ and a debt calculation form were also sent to Mr. Russell. FAC ¶¶ 11, 37. On both documents, Ray Klein, Inc. represented that it was authorized to charge an attorney's fee of $45 for issuing the writ of garnishment. FAC ¶ 51. It further represented that Mr. Russell was responsible for the fee and that the fee had been added to Mr. Russell's outstanding debt. FAC ¶¶ 7-8, 11, 37. To that end, when Ray Klein, Inc. received the garnished wages from Mr. Russell's employer, it deducted the $45 attorney's fee and then credited the remainder of the funds toward satisfaction of Mr. Russell's debt. FAC ¶¶ 7-8.

Mr. Russell filed this putative class action on January 1, 2019. Compl. at 23, ECF No. 1. Defendants moved to dismiss the Complaint in April, but their motion was denied as moot when Mr. Russell submitted his FAC on May 1. *See* Minute Order, ECF No. 13 (citing *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015)). In the FAC, Mr. Russell asserts claims for violations of the UTPA, UDCA, and FDCPA. FAC ¶¶ 50-54. With respect to the UTPA claim, Mr. Russell alleges that Defendants "caused a likelihood of confusion and . . . misunderstanding as to source, approval, and/or certification" of the $45 attorney's fee by wrongly suggesting that the fee was authorized under Oregon law. FAC ¶ 50. Defendants now move to dismiss Mr. Russell's UTPA claim pursuant to Fed. R. Civ. P. 12(b)(6).

## STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow a court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678. When considering a motion to dismiss, a court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-moving party, *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000), but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If a complaint is dismissed, the court must grant the plaintiff leave to amend unless it "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Under his UTPA claim, Mr. Russell must establish three elements: "(1) a 'person' (2) 'in the course of the person's business, vocation or occupation' (3) '[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification' of, among other things, a 'loan or extension of credit.'" *Gordon v. Rosenblum*, 361 Or. 352, 367 (2017). In response, Defendants raise three arguments as to why Mr. Russell's UTPA claim fails. First, Defendants argue that the UTPA's substantive protections are not broad enough to govern the business practices of a debt collector whose conduct is unrelated to the original service rendered to the targeted debtor. Second, Defendants argue that, even if their business practices are subject to the UTPA, they never engaged in any conduct which would violate a consumer's rights under the UTPA. Finally, Defendants argue that, even if their businesses practices are subject to and violated the UTPA, those alleged violations are not actionable because the debtor here never

suffered an ascertainable loss of money or property as a result of the alleged violations. The Court addresses each argument in turn.

**I. Or Rev. Stat. § 646.608(1)(b)**

Mr. Russell alleges that Defendants violated Or. Rev. Stat. § 646.608(1)(b) by causing a "likelihood of confusion or misunderstanding" as to the source, approval, or certification of fees which they added to his outstanding debt when garnishing his wages. FAC ¶ 50. Specifically, he argues that Defendants misrepresented that Or. Rev. Stat. § 18.999(4)(a)(H) authorized Defendants to recover an additional $45 attorney's fee, when, in fact, Defendants never "actually paid" an attorney to issue the garnishment. FAC ¶¶ 33-36, 50.

Defendants argue that, regardless of whether they were authorized to recover an issuance fee under Or. Rev. Stat. § 18.999(4)(a)(H), the UTPA does not govern representations made by a debt collector about such fees. Defendants' argument is an attempt to reframe the issuance fee as the service, notwithstanding the underlying loan Mr. Russell obtained from Washington Mutual Bank.

"Oregon's UTPA . . . was enacted as a comprehensive statute for the protection of consumers from unlawful trade practices." *Pearson v. Phillip Morris, Inc.*, 358 Or. 88, 115 (2015). Although the UTPA does not define "services," it limits the application of its protections to those services "obtained primarily for personal, family, or household purposes," including "loans and extensions of credit." *Id.* (quoting Or. Rev. Stat. § 646.605(6)(a)). Defendants argue that the issuance fee does not constitute "real estate, goods or services," as defined by the UTPA. Def.'s Mot. to Dismiss 4, ECF No. 14.

Defendants are unable to distinguish the controlling case on this issue. *See e.g. Gordon*, 361 Or. 352. In *Gordon*, the court considered whether the UTPA applied to a law firm engaged in

debt collection activities. 361 Or. at 354. One tactic the law firm in *Gordon* allegedly used was to claim the right to attorney's fees without attaching any sort of documentation to such a claim. *Id.* Focusing specifically on ORS 646.608(1)(b), the court held the statute applied to the law firm because their "conduct could have caused debtors likely confusion misunderstanding about, for example, . . . *whether the debtors would have to pay the debt owner's attorneys' fees*." *Id.* at 368–69 (emphasis added). The only difference between *Gordon* and the present case is *how* the debt owner's attorneys' fees were included with the underlying debt. In *Gordon*, the law firm made representations that the loan document itself permitted the collection of attorneys' fees. *Id.* at 354. Here, Defendants represent that they were permitted attorneys' fees through the utilization of an outside statute.

This is a distinction in search of a difference. The service obtained in both *Gordon* and the present action is collection of the original "service," *i.e.* the underlying loan agreement. When a party issues a garnishment and imposes an additional $45 fee, that fee is a modification to the underlying debt because it increases the debt a corresponding amount. Simply put, if Defendant represents that Or. Rev. Stat. § 18.999(4)(a)(H) allows them to modify the debt, they are making a representation about the size of the debt and what Mr. Russell must pay to satisfy the obligation.

It should be noted that Mr. Russell does not frame his FAC (ECF No. 12) in precisely this manner – identifying collection fees as the service—but it contains facts showing that he obtained a loan from Washington Mutual Bank and that he is suing for misrepresentations made in the effort to collect on that original obligation. In the interest of clarifying the precise nature of the claim, Mr. Russell is granted leave to file a second amended complaint identifying the loan as the underlying service obtained by Mr. Russell and clarifying that he is alleging a misrepresentation

by Defendants as to that service (*i.e.*, the debt), rather than a misrepresentation as to Defendants' separate debt collection services.

## II. Or. Rev. Stat. § 18.999(4)(a)(H)

The Court requested supplemental briefing on whether "ORS 18.199(4)(a)(H) permits the recovery of a garnishment issuance fee when the recovery is based exclusively on the salary paid to an in-house attorney whose responsibilities include issuing garnishments." Minute Order, ECF No. 17. Mr. Russell argues that "fees paid to an attorney for issuing a garnishment" does not include salary paid to in-house counsel. Pl.'s Mem. on ORS 18.999(4)(a)(H) 5, ECF No. 21. In response, Defendants argue that there is no legal justification for treating in-house attorneys differently than outside counsel regarding garnishment fees. Def.'s Supp. Br. 2, ECF No. 22.

Oregon courts have not addressed the question of whether in-house attorneys and salaried attorneys are treated differently under Or. Rev. Stat. § 18.999(4)(a)(H). Therefore, the Court "must predict how the highest state court would decide the issue." *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996); *see also Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004). In Oregon, courts first consider the text of the relevant statutory language and the context in which the language appears, including relevant case law. *State v. Gaines*, 346 Or. 160, 171–72 (2009). Courts may also turn to legislative history if useful. *Id.* "If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id.* Here, the Court's goal is to discern the Oregon legislature's intent in enacting the statute and give effect to that intent. *Id.*

In Oregon, "garnishment is the procedure by which a creditor invokes the authority of a circuit court . . . to acquire garnishable property of a debtor that is in the possession, control or

custody of a person other than the debtor." Or. Rev. Stat. § 18.602. A writ of garnishment can be issued by a "court administrator" or by a licensed "attorney." Or. Rev. Stat. § 18.635. The garnishment statute at issues gives garnishors the right to recovery certain moneys and reads as follows:

> This section establishes the right of a plaintiff to recover amounts related to plaintiff's attempts to recover *certain moneys the plaintiff has expended to recover a debt* under ORS 18.854 or to enforce a judgment and establishes procedures for that recovery. The following apply to this section:
> . . .
> (4) This section allows the recovery only of the following:
> . . .
> (H) *Fees paid to an attorney for issuing a garnishment* in an amount not to exceed $45 for each garnishment.

Or. Rev Stat. § 18.999 (2017) (emphasis added).[1] The question before the Court is simple: what did the Oregon legislature intend with the phrase "fees paid to an attorney for issue a garnishment?"

The first step in determining the legislature's intent for any undefined terms is to consider the plain meaning of the statute's text. *Comcast Corp. v. Dep't of Revenue*, 356 Or. 282, 295–96 (2014) (en banc) ("We ordinarily look to the plain meaning of a statute's text as a key first step in determining what particular terms mean.") (citing *PGE v. Bureau of Labor and Indust.'s*, 317 Or. 606, 611 (1993)). Importantly, "as stilted as the approach may sometimes seem," interpreting the plain language may include "frequently consult[ing] dictionary definitions of the terms, on the assumption that, if the legislature did not give the term a specialized definition, the dictionary definition reflects the meaning that the legislature would naturally have intended." *Comcast Corp.*, 356 Or. at 296. For words of common usage, the preferred dictionary is *Webster's Third New International Dictionary* ("*Webster's*"), *id.*, whereas for legal terms of art, the preferred dictionary

---

[1] The Oregon legislature amended the statute in 2019. *See* Or. Rev. Stat. § 18.999 (2019). However, this amended language only applied "to writs of garnishments issued on or after October 1, 2019," so the Court looks to the statutory language in effect at the time this action arose. Or. Laws 2019, ch. 605, § 21 (HB 3447).

is *Black's Law Dictionary* ("*Black's*"). *Dept. of Revenue v. Croslin*, 345 Or. 620, 628 (2009) (en banc) (relying on *Black's Law Dictionary* for the definition of "damages").

Here, a plain reading of the phrase "fees paid to an attorney for issuing a garnishment" implies that the garnishor can only collect up to $45 in relation to the amount expended to issue the garnishment. The dictionary definitions support this interpretation. *Webster's* defines "fee" as "compensation often in the form of a fixed charge for professional service or for special and requested exercise of talent or skill." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 833 (unabridged ed. 2002). *Black's* defines "fee" as "a charge for labor or services, esp[ecially] professional services." BLACK'S LAW DICTIONARY 690 (ninth ed.).

Accordingly, it appears unlikely that in-house attorneys are charging fees to their employer for the issuance of garnishment since most in-house attorneys are compensated via salary. Defendants attempted to frame the question as "whether a 'fee' is 'paid' to an in-house attorney when the garnishor pays the in-house attorney's compensation and benefits [, *i.e.* salary], as opposed to an hourly or flat fee the garnishor would pay an outside attorney." Def.'s Supp. Br. 3. But this misconstrues the purpose of the statute. Or. Rev. Stat. § 18.999 allows "recover[y] [of] certain moneys *the plaintiff has expended* to recover a debt." (emphasis added). When an in-house attorney tries to collect on garnishment fees, what they are really doing is adding a $45 charge to the garnishment without any indication that they expended resources to recover the debt. This directly contradicts the statute's purpose in allowing for the recovery of money spent. *See* Or. Rev. Stat. § 18.999.

### III. Injury

Defendants final argument is that even if they are subject to and violated the UTPA, Mr. Russell's claim still fails because he never suffered an ascertainable loss of money or property

because of the alleged violations. "Ascertainable loss' under the UTPA is amorphous. Any loss will satisfy [the] requirement so long as it is 'capable of being discovered, observed, or established.'" *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 712 (2000) (quoting *Scott v. Western Int. Sales, Inc.*, 267 Or. 512, 515 (1973)).

Defendants argue that Mr. Russell cannot show "an ascertainable loss of money or property *as a result of* his alleged confusion or misunderstanding regarding the source of the issuance fee" misses the mark. Def.'s Mot. to Dismiss 5–6 (emphasis in original). Here, Mr. Russell's loss is the improper collection of the $45 fee. FAC ¶ 50 ("Mr. Russell and putative class members suffered an ascertainable loss of money in the form of the unlawful fees collected from them by defendants, which they otherwise would not have had to pay if defendants had not engaged in conduct violating the UTPA."). Mr. Russell can establish that the fee is a loss of money because it modifies his underlying debt and increases his obligation.

## CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 14, is DENIED.

IT IS SO ORDERED.

DATED this 19th day of November, 2019.

                                               /s/ Michael J. McShane
                                                         Michael McShane
                                                  United States District Judge