IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NICHOLAS RUSSELL
and MICHAEL MCKIBBEN

        Plaintiffs,

   v.

RAY KLEIN, INC.

        Defendant.

No. 1:19-cv-00001-MC

OPINION AND ORDER

**MCSHANE, Judge:**

     Plaintiffs bring this class action lawsuit individually and on behalf of others who were similarly injured by Defendant's alleged violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), Oregon's Unlawful Trade Practices Act ("UTPA"), and Oregon's Unlawful Debt Collection Practices Act ("UDCPA"). Pls.' Mot. Prelim. Approval 8–10, ECF No. 74. After reaching a settlement, Plaintiffs move for preliminary certification of the class and approval of the settlement agreement under Federal Rule of Civil Procedure 23 ("Rule 23"). *Id.* at 8. Because the class fulfills all certification requirements, and the settlement agreement appears fair, reasonable, and adequate, the Court GRANTS Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Certification (ECF No. 74).

1 – OPINION AND ORDER

## BACKGROUND

Plaintiffs Nicholas Russell and Michael McKibben are two Oregon debtors. Pls.' Fourth Am. Compl. ¶¶ 5–6, ECF No. 70. Defendant Ray Klein, Inc. is a debt collection agency. *Id.* ¶ 9. To collect revenue for outstanding debts, Defendant issued garnishments to debtors' employers and banks through its in-house attorneys. *Id.* ¶¶ 29–30. The Oregon Legislature allows collectors to charge fees that compensate for the expense of hiring attorneys who issue such garnishments. *Id.* ¶ 32. Since 2018, Defendant has maintained a practice of charging a $45 garnishment "issuance fee" on all consumer debts. *Id.* ¶¶ 33–34. Plaintiffs allege that Defendant's $45 fee is an abuse of the cost recovery statute because using in-house attorneys relieves Defendant from ever incurring such an expense. *Id.* ¶ 34. Although Defendant denies any wrongdoing, Plaintiffs contend that the fees were unlawfully collected in violation of the FDCPA, UTPA, and UDCPA. *Id.* ¶ 38.

Plaintiffs filed this action in 2019 and amended their complaint four times, while Defendant has moved to dismiss certain claims. Pls.' Mot. 11. The parties underwent rounds of mediation with Judges Jean Mauer and Michael Hogan, the latest of which successfully produced a settlement agreement (ECF No. 74-1). *Id.* at 13. Plaintiffs now seek preliminary approval of the agreement, as well as preliminary certification of the class for settlement purposes only. *Id.* at 8. The proposed class is a group of Oregonians similarly injured by the $45 issuance fees imposed by Defendant from 2018–2019. Pls.' Mot. Ex. 1, ¶ 30. The proposed agreement provides for Defendant's release from liability and any claims of class members who do not opt-out. *Id.* ¶¶ 56–57, 69. In turn, Defendant must pay $2,000,000 into a qualified settlement fund to be dispersed over stipulated expenses. *Id.* ¶¶ 44–47.

**STANDARD OF REVIEW**[1]

Rule 23(e) requires court approval of any settlement in a class action. Fed. R. Civ. P. 23(e). Judicial approval is necessary to combat the "unique due process concerns for absent class members" present in class action settlements. *E.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). District courts employ a "higher standard of fairness" with "a more probing inquiry" when evaluating settlements negotiated prior to certification, as is the case here. *E.g.*, *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019). To ensure fairness for all class members, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

As a threshold matter, the proposed class must satisfy the class certification requirements found in Rule 23(a)–(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997). Once certification is satisfied, the court evaluates the settlement pursuant to Rule 23(e) and may grant preliminary approval if it finds the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Upon preliminary approval of the class certification and settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id.* The matter then proceeds to a final hearing pursuant to Rule 23(e)(2), where class members

---

[1] The Court agrees with other district courts in the Ninth Circuit that the 2018 amendments to Rule 23 provide for a more stringent review of class action settlements at the preliminary approval stage. *See O'Connor v. Uber Techs., Inc.*, Nos. 13-cv-03826, 15-cv-00262, 2019 WL 1437101, at *12–13 (N.D. Cal. Mar. 29, 2019) ("The new Rule 23 clarifies that preliminary approval should only be granted where the parties have shown that the court will likely be able to approve the proposal under the final approval factors in Rule 23(e)(2) and certify the class for purposes of judgment on the proposal. Hence, review for preliminary approval is more robust.") (cleaned up); *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 15-md-2633, 2019 WL 3410382, at *4–5 (D. Or. July 29, 2019); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) ("[B]y scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified, the court allows the parties to decide how to respond to those flaws . . . before they waste a great deal of time and money in the notice and opt-out process.").

may respond to the notice and raise objections. *Id.* The settlement approval is not binding until after the final hearing. *Id.*

## DISCUSSION

Plaintiffs seek preliminary approval of the settlement agreement, as well as preliminary certification of the following class:

> (a) [A]ll individual consumers with Oregon addresses, (b) whose wages or accounts or property was garnished by Ray Klein, (c) between January 1, 2018 through and including September 30, 2019, (d) with respect to a debt incurred primarily for personal, family, or household purposes, (e) from whom Ray Klein collected a purported garnishment issuance fee.

Pls.' Mot. 14. The Court will address certification of the class and then turn to the settlement.

### I. Preliminary Class Certification

Class certification demands a two-pronged approach: Rule 23(a) requires that a class satisfy the four perquisites listed therein and Rule 23(b) requires that a class fall into one of three class action categories. Fed. R. Civ. P. 23. Where, as here, parties request class certification for settlement purposes only, courts are required to pay "undiluted, even heightened, attention" to Rule 23's requirements. *Amchem*, 521 U.S. at 620. Addressing each prong in turn, Plaintiffs have satisfied all requirements.

#### A. FRCP 23(a)

Rule 23(a) requires that the proposed class meet four certification perquisites: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Additionally, the class must meet an implicit requirement known as "ascertainability." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012).

Numerosity requires a class "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, a class of greater than forty members is sufficient. *Giles v. St.*

4 – OPINION AND ORDER

*Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013). Here, a thorough search of Defendant's records revealed 10,007 individuals who fit the class definition. Pls.' Mot. 14. The class sufficiently exceeds the forty-member threshold and contains too many individuals for joinder to be a feasible option. Numerosity is therefore met.

Commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Merely raising common questions is not the focus; rather, the class must suffer the same injury and the claims must depend "upon a common contention," the determination of which would "resolve an issue that is central to the validity of each" claim in one stroke. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, the narrow class definition and issues presented eliminates any commonality concerns. The class is limited to Oregonians who were subjected to the purported fee between January 1, 2018 and September 30, 2019 with respect to personal, family, or household related debts. Pls.' Mot. Ex. 1, ¶ 30. Defendant subjected each class member to its common collection practice of charging $45 for garnishment issuance fees. Pls.' Mot. 21. All claims allege the same violations and implicate the same laws. If the Court were to find that Defendant did in fact employ its collection practice in violation of the FDCPA, UTPA, and UDCPA, that determination would generate answers centrally applicable to all claims and result in class-wide resolution. Commonality is therefore met.

Typicality means "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement focuses on the nature of the claim rather than specific facts, thereby ensuring aligning interests between class representatives and members. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Courts determining typicality consider "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

5 – OPINION AND ORDER

other class members have been injured by the same course of conduct." *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The representative Plaintiffs and class members here share the same claims based on the same underlying conduct. Pls.' Mot. 23. Every claim seeks to challenge the legality of Defendant's practice of imposing a garnishment issuance fee. *Id.* The alleged injuries of an invalid fee, unfair profit, and service confusion are mutually shared across Plaintiffs and the class. *Id.* The action is based on conduct that was experienced class-wide through a common collection practice. *Id.* Moreover, as previously noted, the class is defined narrowly enough to preclude any unique defenses. *Hanon*, 976 F.2d at 508 (explaining that certification is improper where class representatives may be subjected to unique defenses that threaten to eclipse the overarching litigation). Typicality is therefore met.

Adequacy requires that "the representative parties [] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Two factors are relevant: (1) the presence of conflicts of interest between the class representatives, their counsel, and the remaining class; and (2) the likelihood that representatives and counsel will vigorously prosecute on behalf of the class. *Hanlon*, 150 F.3d at 1020. The record here is void of any conflicts of interest between Plaintiffs, their counsel, and the class. All parties share common interests and there are no adverse claims. Pls.' Mot. 23. Plaintiffs have selected counsel with extensive experience prosecuting similar cases and together, they have pursued this action since 2019 and sought relief in accordance with the interests of the larger class. *Id.* at 24. Adequacy is therefore met.

Finally, ascertainability requires enough definiteness of the class to be "administratively feasible for the court to ascertain whether an individual is a member." *Agne*, 286 F.R.D. at 566 (quoting *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998)). The class

members here reside in Oregon and maintain a relationship with Defendant, allowing their names and last known location to be ascertained through records. Pls.' Mot. 25. Further, the class is sufficiently well-defined temporally, geographically, and categorically. Pls.' Mot. 14. Ascertainability is therefore met.

### B. FRCP 23(b)

Having met the requirements of Rule 23(a), analysis turns to the second prong under Rule 23(b), where a class must fall into one of the three class action categories. Fed. R. Civ. P. 23(b). Plaintiffs here seek certification under the third category, which demands that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts typically divide this inquiry into "predominance" and "superiority." Assessing each in turn, Plaintiffs have satisfied this prong as well.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although similar to the commonality inquiry under Rule 23(a), the predominance test is more rigorous. *Id.* at 623–24. Where "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," proceeding as a class—rather than individually—is warranted. *Hanlon*, 150 F.3d at 1022.

The Court agrees with Plaintiffs that it is hard to see where an individual inquiry would obscure the common issues in this action. Pls.' Mot. 27. There are no unique defenses present, no differing statutes of limitations, no choice of law conflicts, and no individualized damage calculations. Any foreseeable individual inquires would be limited to matters like personal

identifying information or respective debt, all of which are immaterial to the claims. *Id.* The resolution of all claims would be driven by determinative questions common to all class members. Examples include whether Defendant's collection practices constituted false or deceptive means, whether Defendant was entitled to collect the $45 fee, whether accounting records reveal improper revenue allocation, and potential defenses. The Court therefore finds that common class questions predominate over individual class member questions.

Superiority focuses on whether "classwide litigation of common issues will reduce" costs and promote efficiency. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Relevant considerations include any interest in individually controlling separate actions, the presence of any current litigation concerning the controversy, the benefits of the chosen forum, and potential difficulties managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). Central to this inquiry, and class actions generally, is the goal of overcoming "the problem that small recoveries do not provide the incentive for individuals to bring a solo action." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Counsel estimated that individual UPTA and UDCPA claims would provide the greater of actual damages or $200, while an individual FDCPA claim would provide actual damages and up to $1,000 in statutory damages. Pls.' Mot. 30. Although individual action allows for a greater recovery than the proposed agreement or proceeding to litigation, it is highly unlikely that each class member would go through the exorbitant time and expense of individual litigation—the outcome of which would be uncertain and the costs of which would far exceed the potential sum awarded. Pls.' Mot. 30–31. In considering the accompanying factors of FRCP 23(b)(3), the notice given to class members sufficiently explains their opportunity to opt-out of the claim, thereby preserving any interest in individually controlling separate actions. There is no ongoing

litigation of this matter. The chosen forum is beneficial as all parties are in Oregon. And finally, manageability is not a concern for settlement-only classes. *Espinosa v. Ahearn*, 926 F.3d 539, 556–57 (9th Cir. 2019); *see also Amchem*, 521 U.S. at 620.

Because the proposed class meets the requirements of Rule 23(a) and (b)(3), the Court GRANTS preliminary certification of the proposed class for settlement purposes only.

## II. Preliminary Settlement Approval

Having properly certified the class, analysis turns to preliminary settlement approval. "The claims, issues, or defenses of a . . . class proposed to be certified for purposes of settlement [] may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). To approve a settlement, a court must find the settlement "fair, reasonable, and adequate" and conduct a final hearing. *Id.* The Ninth Circuit upholds a "strong judicial policy" of favoring class action settlements. *Espinosa*, 926 F.3d at 556. When ruling on a settlement negotiated pre-certification, however, the Ninth Circuit requires an additional "higher standard of fairness." *E.g.*, *Roes, 1–2*, 944 F.3d at 1048. The Court will first apply the federal rules and then move to the heightened standard. The proposed agreement here satisfies both tests.

To guide the inquiry into whether a settlement is "fair, reasonable, and adequate," Congress codified four considerations:[2]

> (A) [T]he class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be

---

[2] In December 2018, Congress amended Rule 23(e) by setting forth these codified factors. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendments. While ruling on attorney fees, the Ninth Circuit noted that district courts must incorporate this new language into their determination of "fair, reasonable, and adequate." *See Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021).

9 – OPINION AND ORDER

> identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)–(D). Assessing each in turn, the factors weigh in favor of preliminarily approving the settlement agreement here.

The record reflects that Plaintiffs and their counsel have adequately represented the class. They have pursued this action for nearly three years, undergoing multiple rounds of briefing, mediation, and extensive discovery, all the while pursuing relief in accordance with class-wide interests. Pls.' Mot. 35. Lengthy mediation sessions with two former judges is sufficient to convince the Court that the agreement was negotiated at an arm's length and is not the product of collusion among the parties. Pls.' Mot. 36.

As to the third consideration, the Court finds, at this preliminary stage, that the relief provided for the class is adequate. The settlement agreement is estimated to return to class members an amount three times greater than the actual damages caused originally by Defendant's issuance fees. Pls.' Mot. 37. Although trial has the possibility of yielding a higher reward, the costs, risks, and delay of trial would completely dwarf any potential reward, not to mention the uncertainty of success. A trial would also render the parties vulnerable to the possibility of appeal, currently precluded by the proposed agreement, which would potentially result in further delay and drain on resources. Pls.' Mot. Ex. 1, ¶ 40. As to the proposed method of distribution, the Court is persuaded that Settlement Services, Inc. ("Administrator")—a separate third-party with 29 years of experience managing settlements—will ensure adequate distribution. Pls.' Mot. 17. The agreed upon timeline is realistic but effective, and reliance on U.S.P.S. is allowed as notice under Rule 23(c)(2)(B). The Court declines to discuss attorney's fees at this time due to their non-binding nature on the proposed agreement. Pls.' Mot. Ex. 1, ¶¶

50–55. The Court notes, however, that counsel's request for a standard fee contingent on the Court's judgment, rather than the agreement, weighs in favor here. *Id.*

Finally, the agreement's equity is illustrated by a number of provisions. Primarily, every class member reserves equal right to opt-out of the class and proceed with their own litigation. *Id.* ¶ 69. Additionally, the same payment, payment schedule, and forfeiture of rights regarding the released entities can be anticipated for each member who does not op-out. *Id.* ¶¶ 56–69. The release is limited to any claims "arising out of the events, transactions and/or practices alleged or that could have been alleged in the Action against the Released Entities." *Id.* ¶ 57. That language combined with the narrowly defined class, the opt-out provisions, and the specificity of the facts and claims in the notice reassures the Court that the proposed release provisions are fair and reasonable to all class members. While the named Plaintiffs will receive a larger sum than what individual class members anticipate, Plaintiffs are statutorily entitled to a larger portion under 15 U.S.C. § 1692k(a)(1)–(2) were they to proceed to trial. *Id.* ¶ 49. Moreover, Plaintiffs are not requesting an additional service award. *Id.* Weighing each of the above considerations under Rule 23(e)(2), the Court finds that the proposed settlement satisfies the federal standards.

The final hurdle for a pre-certification settlement is the Ninth Circuit's heightened standard. When a settlement is negotiated prior to class certification,

> [t]he potential for collusion reaches its apex . . . because, among other things, (1) the court has not yet approved class counsel, who would owe a fiduciary duty to the class members; and (2) plaintiffs' counsel has not yet devoted substantial time and money to the case, and may be willing to cut a quick deal at the expense of class members' interests.

*Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021). The procedural burden is therefore intensified to ensure class representatives and counsel are not securing benefits at the expense of

11 – OPINION AND ORDER

absent class members. *Roes, 1–2*, 944 F.3d at 1048.³ District courts abuse their discretion when they fail to employ a "higher level of scrutiny for evidence of collusion or other conflicts of interest." *Id.* at 1043.

Under this standard, courts have established three "subtle signs of collusion" deserving of higher scrutiny: counsel receiving a disproportionate share of the settlement, parties negotiating a "clear sailing" agreement, and funds reverting to the defendant if unclaimed. *Jones v. GN Netcom, Inc.*, 654 F.3d 935, 947 (9th Cir. 2011). None are present in the instant action. Counsel has stated their intent to request the standard fee of 25%, dependent on the Court's sole approval and immaterial to the settlement agreement's validity. Pls.' Mot. Ex. 1, ¶ 50. The agreement is void of any "clear sailing" agreements or fund reversion provisions. *Id.* ¶ 44. The Administrator of the agreement will make all reasonable attempts to contact class members and whatever funds remain will be sent to the proposed cy pres recipients, Oregon Consumer Justice and the Oregon Consumer League. *Id.* ¶ 17. The Court finds these recipients satisfy the "next best" test as there is a sufficient nexus of underlying interests between the class and cy pres recipients for fair debt collection practices and consumer rights. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). The Court approves the cy pres recipients in accordance with the agreement's payment timeline. *Id.* ¶ 47.

Because the agreement appears fair, reasonable, and adequate, the Court GRANTS preliminary approval of the proposed settlement agreement.

---

³ *See also Jones v. GN Netcom, Inc.*, 654 F.3d 935 (9th Cir. 2011); *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015); *Saucillo v. Peck*, 25 F.4th 1118 (9th Cir. 2022).

### III. Notice Approval

Where the parties have persuaded the court that approval of the class and settlement are likely, the court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," provided that the parties offer the court enough information to "determine whether to give" such notice. Fed. R. Civ. P. 23(e)(1). Upon ordering, courts should direct "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.* at 23(c)(2)(B). The approved notice must include the nature of the action, the class definition and claims, the option to opt out or appear through an attorney, the procedure and timing for exclusions, and the binding effect of a judgment. *Id.*

Plaintiffs offer the Court two forms of notice and a comprehensive plan to notify class members. The short form notice contains each requirement enumerated above in clear, plain language. Pls.' Mot. Ex. C, at 2. The Administrator will mail the short form notice via U.S.P.S. to the last known addresses of class members, which has already been ascertained through a review of Defendant's records. Pls.' Mot. Ex. 1, ¶¶ 59–60. If needed, the Administrator will update addresses based on information received from class members. *Id.* The parties have negotiated a long form notice as well, intended to populate a website accessible to all class members and containing extensive information and documents regarding the settlement. Pls.' Mot. Ex. A. The Court approves of the timeline and delegation of tasks regarding the notices as set forth in the settlement agreement. Pls.' Mot. Ex. 1, ¶¶ 58–64.

**CONCLUSION**

For the above reasons, Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Certification (ECF No. 74) is GRANTED. It is hereby ORDERED:

1. **Class Certification for Settlement Purposes Only:** The Court certifies the proposed class for settlement purposes only as defined in the settlement agreement (Pls.' Mot. Ex. 1, ¶ 30.) and in accordance with this Opinion and Order.

2. **Preliminary Settlement Approval:** The Court grants preliminary approval of the proposed settlement agreement (ECF No. 74-1) subject to a forthcoming final approval hearing pursuant to Rule 23(e).

3. **Appointing Class Representatives:** Under Rule 23(a), the Court finds that Plaintiffs, Nicholas Russell and Michael McKibben, have met their burden and properly stand as representatives for the class.

4. **Appointing Class Counsel:** The Court finds that class counsel has proven their competence and ability in fairly and adequately representing the class's interests pursuant to Rule 23(g). The Court appoints Michael Fuller, Kelly D. Jones, and Matthew Sutton as class counsel.

5. **Administration:** The Court approves of Settlement Services, Inc. administering the notice and processing this class action as laid out in the settlement agreement.

6. **Authorization of Notice:** The Court approves the form and content of the notices in substantially the same form as attached to the settlement agreement and the instant motion (Pls.' Mot. Exs. A, C).

7. **Dates of Performance:** Dates of performance are as follows:

   a. The Administrator will establish the website for long form notice and send short form notice in the mail by June 23, 2022.

   b. Class counsel will file its fee and expense application by June 23, 2022.

   c. Class members who desire to be excluded will request exclusion through the Administrator by August 22, 2022.

   d. Any objections to the settlement agreement or counsel's fees shall be filed or mailed to the Court by August 22, 2022.

   e. Responses to any and all objections shall be filed or mailed by September 12, 2022.

   f. Counsel will file any documents in support of the final approval hearing, including a motion seeking entry of a final approval order by September 12, 2022.

   g. The final approval hearing shall be held at 9:00 a.m. on September 21, 2022 in Courtroom 2 at the Wayne L. Morse United States Courthouse, 405 E Eighth Avenue, Eugene, Oregon, 97401 before the Honorable Michael J. McShane, United States District Judge for the District of Oregon.

**IT IS SO ORDERED.**

DATED this 24th day of May, 2022.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge